```
_____ FILED           _____ RECEIVED
_____ ENTERED         _____ SERVED ON
           COUNSEL/PARTIES OF RECORD

           OCT - 5 2011

        CLERK US DISTRICT COURT
         DISTRICT OF NEVADA
BY: _____ DEPUTY
```

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| TYRONE B. HUTCHINS,<br><br>                    Plaintiff,<br><br>       vs.<br><br>NEVADA DEPARTMENT OF<br>CORRECTIONS, et. al.<br><br>                    Defendants. | 3:10-cv-00369-LRH (WGC)<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for Leave to File Second Amended Complaint. (Doc. # 36.)[1] Defendants opposed (Doc. # 38) and Plaintiff replied (Doc. # 40). Also before the court is Plaintiff's Motion to Stay Summary Judgment Proceedings. (Doc. # 39.)

## I. BACKGROUND

At all relevant times, Plaintiff Tyrone Hutchins (Plaintiff) was in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 6).) Plaintiff is currently incarcerated at Southern Desert Correctional Center (SDCC); however, Plaintiff's allegations also pertain to events taking place when he was housed at Ely State Prison (ESP), Northern Nevada Correctional Center (NNCC), High Desert State Prison (HDSP), and Nevada State Prison (NSP). Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*)

---

[1] Refers to the court's docket number.

1   Plaintiff's original Complaint was filed on September 15, 2010. (Doc. # 6.) Plaintiff asserts
2   that while in NDOC custody, he has suffered heart attacks and related heart and blood pressure
3   problems and has twice been emergency transported from ESP for medical care. (*Id.*) He claims
4   that Defendants transferred him to a prison more than fifty miles from a major hospital in
5   contravention of physicians' orders, with knowledge of his heart condition. (*Id.*) He asserts that
6   Defendants knew of the physicians' orders and acted with deliberate indifference to his serious
7   medical needs, in violation of his Eighth Amendment rights. (*Id.*) After screening, the Complaint
8   was allowed to proceed against Defendants Howard Skolnik, James Baca, E.K. McDaniel, Debra
9   Brooks, Pete Gibson, Debra Noel (wrongly named as Noal), and Jim Benedetti. (*See* Doc. # 5.)

10   On October 8, 2010, Plaintiff filed a Motion for Leave to File Amended Complaint. (Doc.
11   # 9.) On January 4, 2011, the court granted Plaintiff leave to file his Amended Complaint. (Doc.
12   # 15 and Doc. # 16.)  On screening, the court found the Amended Complaint was incomplete
13   because it only indicated Plaintiff sought to add parties. (*See* Doc. # 17.) The Amended
14   Complaint was dismissed with leave to file a second amended complaint within thirty days. (*Id.*)
15   The court advised Plaintiff that any second amended complaint should specifically identify each
16   defendant, clarify what constitutional right he believes each defendant has violated and support
17   each claim with factual allegations about each defendant's actions. (Doc. # 17.) Plaintiff was
18   advised if he failed to file a second amended complaint, the action would proceed on the original
19   Complaint. (*Id.*)

20   Plaintiff failed to file a second amended complaint within thirty days. On February 28,
21   2011, the court ordered the action would proceed on the original Complaint. (*See* Doc. # 18
22   (referring to the original Complaint at Doc. # 6).) Defendants answered on March 2, 2011. (Doc.
23   # 19.) On the same date, the court entered its Scheduling Order (Doc. # 20) requiring that any
24   motion for leave to amend be served within sixty (60) days, unless an exception was granted
25   for good cause shown. (*Id.*)

26   On June 7, 2011, Defendants filed their Motion for Summary Judgment. (Doc. # 23.)

27

28                                                                    2

On June 20, 2011, Plaintiff filed a Motion to Compel. (Doc. # 27 and Doc. # 28 (Errata).) On July 1, 2011, the court stayed the summary judgment proceedings pending the court's decision on the Motion to Compel. (*See* Doc. # 30 and Doc. # 33.)  The Motion to Compel was heard on July 20, 2011, and was denied with the exception of Defendant Skolnik's response to Plaintiff's Request for Admission No. 1, and Plaintiff's First Request for Production of Documents. (*See* Doc. # 34.) In addition, Plaintiff was given five (5) hours to review his medical records and tag the documents he wanted copied, and the medical department was ordered to keep those copies for Plaintiff's use at a later time. (*Id.*)  Finally, Plaintiff was given forty-five (45) days, up to September 3, 2011, to oppose Defendants' Motion for Summary Judgment. (*Id.*)

As of September 3, 2011, Plaintiff had not filed an opposition. Instead, he filed the instant Motion for Leave to File Second Amended Complaint (Doc. # 36) on September 6, 2011, which Defendants oppose (Doc. # 38). Plaintiff subsequently filed a Motion to Stay Summary Judgment Proceedings while his motion for leave to amend is pending. (Doc. # 39.)

## II. DISCUSSION

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).

Defendants did not consent to the amendment; therefore, Plaintiff must obtain leave of court to file his proposed amended pleading. Preliminarily, the court notes that Plaintiff's motion is untimely. The March 2, 2011 Scheduling Order required any motion for leave to amend to be filed within sixty (60) days. (Doc. # 20.) Plaintiff filed his motion more than four months after the deadline to seek leave to amend, was filed on September 6, 2011. (Doc. # 36.) In addition, Plaintiff allowed the discovery completion deadline pass without requesting an extension or moving to amend his complaint. Moreover, he waited eighty-five (85) days after Defendants filed their motion for summary judgment to seek leave to amend. Therefore, to be able to proceed with his Proposed Second Amended Complaint, Plaintiff must first demonstrate good cause for failing to file the motion for leave to amend within the period of time set forth

3

1  in the Scheduling Order. (*See* Doc. # 20.)  Second, he must establish justice requires leave to

2  amend be granted under Rule 15(a).

3      **A. Good Cause Exists for Plaintiff to Exceed the Scheduling Order Deadline**

4  **Governing Leave to Amend**

5      Plaintiff explains that his motion was untimely because he was forced to compel further

6  discovery responses from Defendants and review of his medical records, which led him to

7  information that supports his proposed amendment. (Pl.'s Reply (Doc. # 40).) He also claims

8  that he discovered additional information by way of the exhibits submitted in support of

9  Defendants' Motion for Summary Judgment, leading him to determine the correct defendants

10  to be named and to whom he should direct his allegations. (*Id.*)

11      Defendants' Motion for Summary Judgment was filed on June 7, 2011. (Doc. # 23.) On

12  July 20, 2011, the court ordered further responses to discovery, afforded Plaintiff an opportunity

13  to review his medical records, and gave him an additional forty-five (45) days to oppose the

14  Motion for Summary Judgment. (Doc. # 34.) Plaintiff filed his motion to amend on September

15  6, 2011. (Doc. # 36.) It is reasonable to believe that Plaintiff discovered additional information

16  leading him to identify the "correct" defendants and specifically tailor his allegations during

17  the time period he was allotted to review his medical records and respond to Defendants' Motion

18  for Summary Judgment. The court appreciates Plaintiff's desire to direct his allegations to the

19  proper defendants, and a review of his proposed amendment reveals that appears to be his

20  intent. Since Plaintiff presumably discovered this information some time between the July 20,

21  2011 hearing on his Motion to Compel, and the time he filed the instant motion, September 6,

22  2011, the court does not find Plaintiff was dilatory in seeking leave to amend. Accordingly, the

23  court finds there is good cause to exceed the deadline for amendments set forth in the

24  Scheduling Order, and other court-established deadlines.

25      **B. The Interests of Justice Require Leave to Amend Be Granted**

26      Now, the court must address whether the interests of justice require granting leave to

27  amend. *See* Fed.R.Civ.P. 15(a)(2). While the court should freely give leave to amend when justice

28                                       4

1   requires, leave need not be granted where amendment: "(1) prejudices the opposing party; (2)

2   is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource*

3   *Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted). The

4   court will review these factors with respect to Plaintiff's motion.

5                    **1. The Proposed Second Amended Complaint**

6                         **a.  Factual Allegations**

7          The Proposed Second Amended Complaint names Defendants NDOC[2], Karen Gedney,

8   Nurse Jane Doe, Howard Skolnik, Bruce Bannister, James Benedetti, Donald Helling, James

9   Cox, E.K. McDaniel, and Debra Brooks. (Doc. # 36-1 at 1-5.)

10         The allegations of the Proposed Second Amended Complaint are summarized as follows:

11         On May 14, 2005, while housed at ESP, Plaintiff suffered serious heart complications

12   resulting in an emergency life flight to Valley Hospital in Las Vegas. (Doc. # 36-1 at 6.) He was

13   subsequently transported to HDSP, in Indian Springs, Nevada, on May 17, 2005. (*Id.* at 6-7.)

14   He was transported back to ESP on June 21, 2005. (*Id.* at 7.) In December 2005, Plaintiff was

15   sent to the ESP infirmary for heart complications. (*Id.*) In April 2006, Plaintiff was transported

16   to a hospital for treatment for heart complications. (*Id.*) On April 19, 2006, ESP Nurse Boja

17   Lemich referred Plaintiff for admission to the Cardio Clinic at NNCC for his heart condition.

18   (*Id.*) In August 2006, Plaintiff was transferred from ESP to NNCC, and was housed in the NNCC

19   Regional Medical Facility (RMF) to monitor his heart condition.  (*Id.*) On September 6, 2006,

20   Dr.  Karen Gedney, at NNCC, entered a health narrative that Plaintiff was to be kept at NNCC

21   as a result of his heart condition, and on September 7, 2006, said that Plaintiff should stay

22   "north" because he was too unstable to be housed at ESP. (*Id.* at 7-8.)

23

24

25

26          [2]      Plaintiff names NDOC despite the fact that it was previously dismissed with prejudice. (*See* Doc.
       # 5 at 4.) In addition, he adds Defendants Karen Gedney, Nurse Jane Doe, Bruce Bannister, Donald Helling, and
27   James Cox.  (Doc. # 36-1 at 1-5.) He appears to dismiss Defendants Baca, Gibson, and Noel. (*Id.*)

28                                          5

1    On November 11, 2006, Plaintiff was discharged from NNCC RMF and sent to NNCC

2 administrative segregation to be monitored. (Doc. # 36-1 at 8.) On February 15, 2007, Plaintiff

3 was transferred from NNCC to NSP. (*Id.*) On February 23, 2007, Plaintiff was seen by

4 Dr. Snyder, who like Dr. Gedney did previously, entered a health narrative that Plaintiff was

5 to be kept in Carson City as a result of his heart problems. (*Id.*)

6    Plaintiff was subsequently transferred back to NNCC, where his heart condition was

7 monitored. (Doc. # 36-1 at 8.) In June 2007, Plaintiff alleges that Dr. Gedney deleted

8 Dr. Snyder's health narrative that he should be kept in Carson City. (*Id.* at 8-9.)

9    In June 2009, while housed at NNCC, Plaintiff was charged and found guilty of a

10 disciplinary infraction, and while he maintains his innocence, he was sentenced to eighteen (18)

11 months disciplinary segregation. (Doc. # 36-1 at 9.) The NNCC classification committee

12 recommended to the NDOC Offender Management Division (OMD) that Plaintiff be transferred

13 to ESP to serve his disciplinary segregation, which was approved by OMD on September 15,

14 2009. (*Id.*) Plaintiff asserts he also had to be cleared by medical prior to transfer, and NDOC

15 medical policy required clearance by a nurse, and not a qualified medical doctor. (*Id.* at 9-10.)

16 He asserts that this policy was promulgated by Defendants Skolnik, Bannister, Helling, Cox,

17 and Benedetti. (*Id.* at 10.)

18    Plaintiff alleges that the medical clearance transfer report was prepared and signed by

19 NNCC Nurse Jane Doe on September 25, 2009, who knew from Plaintiff's medical records that

20 he was not to be transferred to ESP because of his heart condition. (Doc. # 36-1 at 10.) Plaintiff

21 was transferred to ESP on September 29, 2009. (*Id.*) Plaintiff maintains that he notified ESP

22 officials, including Defendants McDaniel and Brooks, of his medical need and the fact that he

23 should not be housed at ESP; to no avail. (*Id.*)

24    On November 15, 2009, Plaintiff began experiencing serious heart complications and

25 was emergency life flighted to Carson Tahoe Hospital in Carson City. (Doc. # 36-1 at 11.)

26 Following treatment and release, he was transported back to NNCC for monitoring. (*Id.*)

27

28                                          6

1  Dr. Johns issued an order that Plaintiff was to be kept in Carson City due to his heart condition.

2  (*Id.*)

3          In March 2010, Plaintiff was transferred from NNCC to HDSP, which was in proximity

4  to major hospitals in Las Vegas. (Doc. # 36-1 at 11.) He continued to receive monitoring and

5  treatment for his heart condition at HDSP. (*Id.*) In October 2010, Plaintiff was transferred to

6  Southern Desert Correctional Center (SDCC), in proximity to major Las Vegas hospitals, where

7  his heart condition continues to be treated and monitored. (Doc. # 36-1 at 11-12.) He does not

8  appear to allege the transfer to HDSP or SDCC violated his rights.

9                          **b. Legal Allegations**

10         In Count I, Plaintiff asserts that Defendant Gedney violated his rights under the Eighth

11 Amendment of the United States Constitution, Article 1, § 6 of the Nevada Constitution[3], Nev.

12 Rev. Stat. (NRS) 209.371[4], NRS 212.020[5], and NRS 197.200[6], when she deliberately deleted

13 restrictions precluding Plaintiff's transfer to ESP from his medical records. (Doc. # 36-1 at 13-

14 14.)

15         In Count II, Plaintiff asserts that Nurse Jane Doe violated his rights under the Eighth

16 Amendment of the United States Constitution, Article 1, § 6 of the Nevada Constitution,

17 _____

18    [3]      Art. 1, § 6 of the Nevada Constitution contains the corollary provision to the Eighth Amendment
of the United States Constitution, prohibiting cruel and unusual punishment.

19    [4]      Nev. Rev. Stat. 209.371 provides: "Corporal punishment and inhumane treatment of offenders
20 are prohibited."

       [5]      Nev. Rev. Stat. 212.020, Inhumanity to prisoners, provides: "1. A jailer or person who is guilty
21 of willful inhumanity or oppression to any prisoner under care or custody of the jailer or person shall be punished:
(a) Where the prisoner suffers substantial bodily harm from the inhumanity or oppression, for a category D felony
22 as provided in NRS 193.130. (b) Where no substantial bodily harm results, for a gross misdemeanor. 2. Whether
or not the prisoner suffers substantial bodily harm, any public officer guilty of willful inhumanity is guilty of a
23 malfeasance in office."

24    [6]      Nev. Rev. Stat. 197.200, Oppression under color of office, provides: "1. An officer, or a person
pretending to be an officer, who unlawfully and maliciously, under pretense of color of official authority: (a)
25 Arrests or detains a person against the person's will; (b) seizes or levies upon another's property; (c) Dispossesses
another of any lands or tenements; or (d) Does any act whereby the person, property or rights of another person
26 are injured, commits oppression. 2. An officer or person committing oppression shall be punished: (a) Where
physical force or the immediate threat of physical force is used, for a category D felony as provided in NRS 193.130.
27 (b) Where no physical force or immediate threat of physical force is used, for a gross misdemeanor."

28                                          7

1  NRS 209.371, NRS 212.020, and NRS 197.200, when she cleared Plaintiff for transfer to ESP

2  with knowledge that his medical records precluded his transfer. (Doc. # 36-1 at 15-16.)

3      In Count III, Plaintiff alleges that Defendants Skolnik, Bannister, Helling, Cox, and

4  Benedetti violated his rights under the Eighth Amendment of the United States Constitution,

5  Article 1, § 6 of the Nevada Constitution, NRS 209.371, NRS 212.020, and NRS 197.200, by

6  promulgating, permitting, or maintaining a policy, practice or custom of allowing or requiring

7  a nurse rather than a qualified medical doctor to conduct medical clearance for Plaintiff for

8  purposes of institutional transfers. (Doc. # 36-1 at 17-18.) In addition, he asserts that this policy

9  resulted in Plaintiff being transferred back to ESP, where he suffered serious heart

10  complications and was emergency life lifted to a hospital in Carson City. (*Id.*)

11      In Count IV, Plaintiff alleges that Defendants McDaniel and Brooks violated his rights

12  under the Eighth Amendment of the United States Constitution, Article 1, § 6 of the Nevada

13  Constitution, NRS 209.371, NRS 212.020, and NRS 197.200, when they deliberately failed to

14  take reasonable steps to expedite his transfer from ESP, while fully aware that Plaintiff should

15  not have been housed at ESP because of his heart condition. (Doc. # 36-1 at 19-20.)

16      Plaintiff requests compensatory, punitive, declaratory and injunctive relief. (Doc. # 36-1

17  at 23-24.)

18          **2. Analysis**

19            **i.  Whether the filing of a Second Amended Complaint will**

20  **Prejudice Defendants**

21      Defendants do not argue that Plaintiff seeks leave to amend in bad faith. Rather, they

22  argue that they would be prejudiced if leave to amend is granted, and that granting leave to

23  amend would result in an undue delay in litigation. Specifically, they assert that significant time

24  has been spent preparing Defendants' dispositive motion, and they have invested a substantial

25  amount of time in investigating and defending against Plaintiff's initial theory of the case.

26  (Defs.' Opp.  (Doc. # 38).)

27

28

1   While the court appreciates and specifically recognizes that Defendants have been
2 diligent in this matter and have spent a substantial amount of time on their defense, the overall
3 theory of the case does not vary significantly from the original Complaint to the Proposed
4 Second Amended Complaint. The crux of Plaintiff's allegations remains consistent in the original
5 Complaint and the Proposed Second Amended Complaint: Defendants were deliberately
6 indifferent to his serious medical need in violation of the Eighth Amendment when they
7 transferred him to ESP despite knowledge of his heart condition and direct orders that he should
8 not be transferred from Carson City. (*See* Doc. # 6 and Doc. # 36-1.) While Plaintiff now asserts
9 a violation of the Nevada Constitution and various provisions of the Nevada Revised Statutes,
10 which are new legal theories of recovery (addressed further below), his overall theory supporting
11 these claims remains the same. Therefore, the effort spent investigating and defending against
12 Plaintiff's original Complaint is not in vain, and much of the investigation and research required
13 to defend against the Proposed Second Amended Complaint has already been done. In fact,
14 the Proposed Second Amended Complaint should make it less burdensome for Defendants to
15 proceed with their defense because it contains more detailed factual allegations than the original
16 Complaint, and is narrowly tailored to the appropriate defendants. While the court appreciates
17 that Defendants will undoubtedly be inconvenienced by an amendment, it finds Defendants
18 will not be unduly prejudiced.

19   The court also finds that granting leave to amend will not result in an undue delay in the
20 litigation. This allegations of the Proposed Second Amended Complaint center around Plaintiff's
21 medical records, and to a lesser extent, the grievances and responses concerning these facts.
22 For that reason, most, if not all, of the discovery in this action should be complete or nearing
23 completion. Defendants certainly have been in possession of these critical documents for some
24 time now. Moreover, Defendants will have already done much of the legwork to prepare a
25 motion for summary judgment. In sum, the court finds the interests of justice require that
26 Plaintiff's Motion for Leave to Amend (Doc. # 36) be granted, and the Clerk should be directed
27 to file the Second Amended Complaint.

28

### ii. Screening of the Proposed Second Amended Complaint

To streamline this matter, the court has concurrently screened the Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff was previously advised NDOC is not a proper party to this lawsuit, and was previously dismissed with prejudice. Accordingly, NDOC should be dismissed from the Second Amended Complaint, with prejudice. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *see also Black v. Nevada Dept. of Corrections*, 2010 WL 2545760, at *2 (Slip Copy, D. Nev., June 21, 2010).

The court finds that Plaintiff states a colorable claim under the Eighth Amendment to the United States Constitution, and under Article 1, § 6 of the Nevada Constitution against Defendants Karen Gedney, Howard Skolnik, Bruce Bannister, James Benedetti, Donald Helling, James Cox, E.K. McDaniel, and Debra Brooks.

Plaintiff also names Defendant "Nurse Jane Doe." There is no provision in the Federal Rules of Civil Procedure permitting the use of fictitious defendants. *See Fifty Associates v. Prudential Ins. Co.*, 446 F.2d 1187, 1191 (9th Cir. 1970); *McMillan v. Dep't of the Interior*, 907 F.Supp. 322 (D. Nev. 1995). If there are unknown persons, whose role is known, that fact should be expressed in the pleading, but it is unnecessary to include "Doe" parties in the pleadings. This does not preclude a party's right, upon learning the identity of the unknown party, to seek leave to amend and have the court determine whether the amendment relates back in time to the original filing, if circumstances permit. Accordingly, Defendant "Nurse Jane Doe" should be dismissed. If and when Plaintiff discovers her true identity, he may seek leave to amend, and the court will determine at that time whether leave should be permitted. It should be noted that Nevada law governs the statute of limitations in § 1983 actions, and rules governing relation back. *See, e.g., Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989). In the event a plaintiff seeks to add a defendant whose identity was previously unknown, the plaintiff must, among other things, establish reasonable diligence in ascertaining

10

the true identity of the intended defendants and that the plaintiff promptly moved to amend. *See* Nevada Rule of Civil Procedure 10(a); *Nurenberger Hercules-Werke GMBH v. Virostek*, 822 P.2d 1100, 107 Nev. 873 (Nev. 1991).

Plaintiff's allegations under NRS 209.371, NRS 212.020, and NRS 197.200 seek to hold Defendants criminally liable for their alleged conduct. Courts have long held that, unless an exception exists, "'criminal statutes cannot be enforced by civil actions.'" *Collins v. Palczewski*, 841 F.Supp. 333, 340 (D.Nev. 1993) (quoting *Bass Angler Sportsman Soc. v. United Steel Corp.*, 324 F.Supp. 412, 415 (S.D. Ala. 1981) (citation omitted); *United States v. Jourden*, 193 F. 986 (9th Cir. 1912)). Accordingly, Plaintiff's state law claims brought under NRS 209.371, NRS 212.020, and NRS 197.200, should be dismissed with prejudice.

As a result of the foregoing recommendations, Defendants' pending Motion for Summary Judgment (Doc. # 23) does not address the operative complaint. Therefore, Defendants' Motion for Leave to File Confidential Documents in Support of Defendants' Motion for Summary Judgment (Doc. # 22) and Defendants' Motion for Summary Judgment (Doc. # 23) should be denied as moot. Plaintiff has also filed a Motion to Stay the Summary Judgment Proceedings while his motion for leave to amend is pending (Doc. # 39), which should be denied as moot. Finally, the Scheduling Order (Doc. # 20) should be vacated.

### III.  RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

(1) Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. # 36) be **GRANTED**, and the Clerk be directed to file the Second Amended Complaint;

(2) NDOC be **DISMISSED** from the Second Amended Complaint, **with prejudice**;

(3) Defendant Jane Doe be **DISMISSED** from the Second Amended Complaint, **without prejudice**;

(4) Plaintiffs state law claims brought under NRS 209.371, NRS 212.020, and NRS 197.200 be **DISMISSED** from the Second Amended Complaint, **with prejudice**;

11

(5) Defendants' Motion for Leave to File Confidential Documents in Support of Defendants' Motion for Summary Judgment (Doc. # 22), and Defendants' Motion for Summary Judgment (Doc. # 23) be **DENIED AS MOOT**;

(6) Plaintiff's Motion to Stay Summary Judgment Proceedings (Doc. # 39) be **DENIED AS MOOT**;

(7) The Scheduling Order (Doc. # 20) be **VACATED**;

(8) The Clerk electronically serve a copy of this order, along with a copy of the Second Amended Complaint, on the Office of the Attorney General of the State of Nevada, attention Pamela Sharp, when an order is entered by the District Judge adopting this Report and Recommendation. The Attorney General shall advise the court within twenty-one (21) days of the date of entry of the District Judge's order adopting this Report and Recommendation whether they can accept service of process for the named Defendants and the last known address under seal of the Defendants for which they cannot accept service. If the Attorney General accepts service of process for any named Defendant(s), such Defendant(s) shall file and serve an answer or other response to the complaint within thirty (30) days of the date of the notice of acceptance of service; and

(9) Henceforth, Plaintiff shall serve upon Defendants, or, if an appearance has been made by counsel, upon their attorney(s), a copy of every pleading, motion, or other document submitted for consideration by the court. Plaintiff shall include with the original paper submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the Defendants or counsel for Defendants. If counsel has entered a notice of appearance, at the address stated therein. The court may disregard any paper received by a district judge or a magistrate judge that has not been filed with the Clerk, and any paper which fails to include a certificate showing proper service.

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within

1   fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's

2   Report and Recommendation" and should be accompanied by points and authorities for

3   consideration by the District Court.

4        2.     That this Report and Recommendation is not an appealable order and that any

5   notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the

6   District Court's judgment.

7        DATED: October 5, 2011

8

9                       UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                      13